Joseph A. SICILIANO, Plaintiff,

v.

AMERICAN PACIFIC DAIRY PRODUCTS, Inc., a corporation, Defendant.

Civ. No. 59–54.

District Court of Guam.

March 2, 1955.

John A. Bohn and Robert E. Duffy, Agana, Guam, for plaintiff.

Finton J. Phelan, Jr., Agana, Guam, for defendant.

SHRIVER, District Judge.

The plaintiff began his action against the defendant for the appointment of a receiver and for a partnership accounting. On June 23, 1952 the plaintiff was a resident of Guam and was president of a Guam corporation known as Pacific Enterprises, Inc., of which corporation he was the owner of nearly all except qualifying shares. Because of his energy and business acumen he was recognized as a very successful businessman.

The defendant is a corporation organized and existing under the laws of the State of Washington. Its president, Edward Thompson, together with associates had caused the corporation to be organized primarily for the purpose of opening a store in Guam to sell at wholesale and retail ice cream products through the use of a patented process. He came to Guam where he contacted the plaintiff. The plaintiff showed him many business courtesies and agreed to act as the corporation's resident agent. At that time there was some discussion of the plaintiff's buying an interest in defendant's business, but the plaintiff expressed the view that the percentage offered him was not sufficient to interest him. The defendant obtained a lease and proceeded to construct its store to be known as the "Dairy Queen." It employed a part-time manager for this purpose.

As the store was nearing completion in June 1953 Edward Thompson again came to Guam and learned that the part-time manager would not be available. As he was impressed with plaintiff's business ability, he offered, and the plaintiff accepted, a 50 percent interest in the business. Thompson, acting for the defendant corporation, entered into a co-partnership agreement with the plaintiff under the terms of which each partner paid into the partnership $15,000 in cash or other assets. This agreement was entered into June 23, 1952, and the partnership was to be known as Dairy

Queen of Guam with expansion as the partners might agree upon. The agreement provided that the plaintiff was to receive a salary during the period that he acted as manager of the partnership with an increase in salary if a second outlet should be opened. The agreement provided that the defendant would have its officers, agents and employees devote such time as might be mutually agreed upon between the partners and the plaintiff agreed to devote such time as might be mutually agreed upon, *"together with his skill and energy,* to the best interest of the business of the partnership." (Italics supplied.)

Coincident with the partnership agreement, a second agreement was entered into under the terms of which the defendant transferred its interests to the partnership and the partnership agreed to pay off, in addition to capital investment, an amount of $8,026 to the defendant. The agreement also provided that plaintiff could participate in any business developed in Okinawa. The lease on the land was duly assigned to the partnership, and the partners executed and filed their certificate of copartnership for transacting business under a fictitious name.

As of the time these agreements were entered into the situation was perfectly clear. The defendant needed the plaintiff to manage its store in which it had invested nearly all of its corporate capital. In turn the defendant was given the opportunity to invest in what proved to be a very profitable business. For his $15,000 and an additional $4,000 to be paid out of profits he received a fifty percent interest in a new and challenging business enterprise along the lines of his business experience and aptitude. The salary to be paid to him was a liberal one in view of the time he would be required to spend in management, and in turn the defendant was satisfied that managerial responsibilities were in competent hands. The plaintiff immediately assumed his managerial responsibilities and in addition to his personal services used employees of Pacific Enterprises,

Inc. to complete the store for opening and operation. Thompson left Guam two or three days after the agreements were executed.

But the plaintiff became involved in domestic difficulties and left Guam about a week after the agreements were executed. He left instructions with the management personnel of Pacific Enterprises, Inc. to carry on the partnership business in addition to their other duties, but before leaving he arranged for the construction of a building in connection with the partnership store for the sale of sandwiches and soft drinks. He contended that this was built with Thompson's knowledge and consent as part of the partnership, but Thompson denied this. In a companion case, Pacific Enterprises, Inc. v. the partners, the court wrote down the value of this building to correspond to what the court considered its value to the partnership since it was never used for its intended purpose. In that case Pacific Enterprises, Inc. was given judgment for amounts expended by it for the partnership including the reduced cost of the building.

Upon reaching San Francisco in July 1952 the plaintiff telephoned Thompson and informed him that he would be gone from Guam for about two months, but in actuality he did not return for about two years. However, the partnership business was carried on by the employees of Pacific Enterprises, Inc. Funds were forwarded to Thompson. Books were kept and reports accepted by the defendant which indicate that during the first year of operation the business made a gross profit equal to the entire capital investment of the partners. Thompson was in contact with the plaintiff and made every reasonable effort to induce him to return and no action was taken to liquidate the partnership until many months after this situation was known to exist; then the defendant indulged in what the court characterized as a "fiction" and attempted to nullify the agreements upon the ground that its board of directors had not ratified them. The defendant took full advantage of the

services being performed by Pacific Enterprises, Inc. and accepted the benefits of a successful operation; it has not accounted for any profits during such period. The contention that the agreements were not ratified is disposed of in a letter written by Thompson to plaintiff's representative in Guam under date of October 9, 1952 (Plaintiff's Exhibit No. 7) in which he advised that the agreements had been approved with certain qualifications to help the plaintiff in his troubles.

In April 1953 Thompson sent his son to Guam with instructions to assist Pacific Enterprises, Inc., or more specifically, its officers and employees who were managing the partnership business. But the conditions under which the business was being operated were such that the son took over the management of the partnership and its existing records. Among such conditions were:

(a) The sanitary conditions at the store were not good.

(b) The cash receipts were not deposited daily but the bags containing returns were kept in the safe with Pacific Enterprises funds, oftentimes in large amounts.

(c) The books for the partnership had not been posted for a long period of time; consequently monthly reports were delayed.

(d) There was an intermingling of accounts in that Pacific Enterprises, Inc. was furnishing supplies and services for which no charges were currently being posted as debits against the partnership.

(e) The store was being operated irregularly with insufficient controls.

(f) In addition to the foregoing the evidence showed that a cash register had broken down and was not replaced or repaired for a long period of time.

The defendant then abandoned its efforts to get the plaintiff to return and took exclusive control of the partnership business. As of July 1, 1953 it had taken full control, had established its own set of books and was operating the business as a sole corporate enterprise. The record does not show that the plaintiff objected to this, nor does it show that the defendant made reports or in any way treated the plaintiff as a partner after that date. The plaintiff delayed until September 1954 to begin his action.

The plaintiff contends that the partnership agreement did not require him to act as manager but merely provided for his compensation while employed as manager. While it is true that the agreement could be more explicit, no provision is made in the agreement for any other manager or for selecting any other manager. The plaintiff was in Guam; Thompson was to be in Seattle, Washington. The entire agreement contemplated that the defendant relied upon the plaintiff to provide his services and initiative in carrying on the business. This is further evidenced by paragraph 13(a) of the agreement which provides that the salary of the plaintiff should cease at the time of his death. It is inconceivable that if the plaintiff was not obligated to manage the business that no provision would have been made for the appointment of another manager. While the agreement makes provision for the withdrawal of a partner, neither of the parties attempted to follow these provisions. This court is of the view that while no damages were shown as a result of the breach, the plaintiff breached his agreement as of July 1, 1952 but continued as a full partner until July 1, 1953 when the defendant excluded him and took over the business.

■ The court first concludes that it has jurisdiction over the parties and the subject matter. The court is not concerned as to whether the partnership agreement was *ultra vires* the powers of the defendant:

"Even where a corporation is without authority under its charter to form a partnership with another, it may be held liable as a partner to prevent injustice." Mervyn Investment Co. v. Biber, 184 Cal. 637, 194 P. 1037, 1040.

■ In the court's view whether this was a partnership or a joint venture,

the rights of the parties are governed by Section 2432, Civil Code of Guam.[1] This section was taken from the Civil Code of California and now appears as Section 15038 of the Corporation Code of California. As such it may be construed in the light of California decisions, at least those in existence when the provision was adopted, United States v. Johnson, 9 Cir., 181 F.2d 577. The leading California case is Zeibak v. Nasser, 12 Cal.2d 1, 82 P.2d 375, which was decided after the adoption of the Guam codes but involved a joint venture entered into before such adoption. It is recognized that while subsequent California decisions do not necessarily control, Anderson v. United States, 9 Cir., 157 F.2d 429, it is believed that the decision correctly states the law, regardless of when it was handed down. The following general principles are taken from the syllabus:

1. "§ 2432. Rights of partners to application of partnership property. .

"(1) When dissolution is caused in any way except in contravention of the partnership agreement, each partner, as against his copartners and all persons claiming through them in respect of their interests in the partnership, unless otherwise agreed, may have the partnership property applied to discharge its liabilities, and the surplus applied to pay in cash the net amount owing to the respective partners. But if dissolution is caused by expulsion of a partner, bona fide under the partnership agreement, and if the expelled partner is discharged from all partnership liabilities, either by payment or agreement under Section 2430 paragraph (2), he shall receive in cash only the net amount due him from the partnership.

"(2) When dissolution is caused in contravention of the partnership agreement the rights of the partners shall be as follows:

"(a) Each partner who has not caused dissolution wrongfully shall have:

"I. All the rights specified in paragraph (1) of this section, and

"II. The right, as against each partner who has caused the dissolution wrongfully, to damages for breach of the agreement.

"(b) The partners who have not caused the dissolution wrongfully, if they all desire to continue the business in the same

"(2) Joint Ventures—Statutory Construction. The rights and liabilities of joint adventurers, as between themselves, are governed by the same principles which apply to a partnership; and section 2432 of the Civil Code, which relates to the rights of partners on dissolution, is not confined in operation to partnerships, but is applicable in the case of dissolution of joint ventures.

\* \* \* \* \* \*

"(5) Dissolution—Wrongful Conduct—Statutory Construction. Section 2432 of the Civil Code, which provides the rights and remedies of the partners when a dissolution has been effected because of the wrongful conduct of one of the partners, is applicable even though the actual dissolution is effected by a decree of court, when such dissolution is

name, either by themselves or jointly with others, may do so, during the agreed term for the partnership and for that purpose may possess the partnership property; provided, they secure the payment by bond approved by the court, or pay to any partner who has caused the dissolution wrongfully, the value of his interest in the partnership at the dissolution, less any damages recoverable under clause (2) (a) II of this section, and in like manner indemnify him against all present or future partnership liabilities.

"(c) A partner who has caused the dissolution wrongfully shall have:

"I. If the business is not continued under the provisions of paragraph (2) (b) all the rights of a partner under paragraph (1), subject to clause (2) (a) II of this section.

"II. If the business is continued under paragraph (2) (b) of this section the right as against his copartners and all claiming through them in respect of their interests in the partnership to have the value of his interest in the partnership less any damages caused to his copartners by the dissolution, ascertained and paid to him in cash, or the payment secured by bond approved by the court, and to be released from all existing liabilities of the partnership; but in ascertaining the value of the partner's interest the value of the good will of the business shall not be considered."

caused by the wrongful conduct of a partner in contravention of the partnership agreement, and the court decrees the dissolution because of such wrongful conduct.

\* \* \* \* \* \*

"(8) Remedies—Procedure—Statutory Construction—Due Process—Constitutional Law.—Section 2432 of the Civil Code, relating to the rights of partners on dissolution, is purely remedial in that it provides for a mode of procedure which a partner must be deemed to have consented to when he entered into his undertakings; and in said action, where plaintiff was afforded the right to have his cause tried and determined under the same rules of procedure that are applied to similar actions brought pursuant to the Uniform Partnership Law, and he invoked the process of the law himself, he could not complain that his property was taken from him without due process of law under said act, in that he was denied one-half the value of the good will."

The Zeibak case involved a joint venture. Zeibak put up part of the capital but the Nassers at all times managed the venture. The trial court held that Zeibak had violated the joint venture agreement, but held that he was entitled to his interest as of the date of the court's decree of dissolution; the Nassers contended that Zeibak's interest should have been determined as of the date of his breach. In affirming the trial court, the court said, 12 Cal.2d at page 16, 82 P.2d at page 382:

"Although this finding might well have been more clearly phrased, any apparent ambiguity therein is completely dispelled by the words of the trial court just referred to. Throughout the findings, conclusions of law, and into the final judgment the trial court consistently adhered to the date July 20, 1934 as the date upon which plaintiff's interest should be ascertained. Furthermore, it may be said that after December 11, 1932 the acts and conduct of the defendants were wholly inconsistent with a recognition upon their part that they considered the venture had been dissolved ipso facto as of that date. Notwithstanding the fact that on one occasion the defendants informed plaintiff that they considered he had breached the partnership agreement by his failure to sign the agreement upon that day, up to the date of trial, the parties continually negotiated, each with the other, looking to a settlement of their differences, and during the entire time, to all intents and purposes they resumed and continued the partnership relation."

■ In the instant case just the opposite is true. The plaintiff, having breached his agreement, forced the defendant to protect itself by taking over the partnership assets. Prior to this step the defendant had made every reasonable effort to induce the plaintiff to comply and to leave the door open for his return. But having taken the step, under what the court considers the erroneous assumption that the plaintiff had never been a partner, the business was operated by the defendant to the complete exclusion of the plaintiff. The defendant caused a second store to be opened and purchased 70 percent of the stock in the local corporation formed for such purpose, using partnership funds for such purpose but taking the stock in defendant's name. While, as pointed out previously, the defendant did not show damage as a result of the plaintiff's breach since the business prospered, it is entirely within the realm of conjecture as to whether greater profits would not have been made if the plaintiff had been present to manage the operation.

The court therefore is of the view that the parties dissolved their partnership as between themselves on July 1, 1953, and that the plaintiff's interests should be determined as of that date without reference to the value of the good will of the business. But since the defendant continued to use the profits and capital

investment of the plaintiff for its own purposes it would seem that the plaintiff is entitled to interest on the amount found to be due him on July 1, 1953 at six percent per annum until paid. The evidence shows that the business continued to make a profit until September 1954 when the plaintiff began his action.

Counsel for the plaintiff shall prepare findings and conclusions and settle with counsel for defendant in 20 days, together with an appropriate decree and order for determining the plaintiff's interests consistent with the opinion.